| | | |
|---|---|---|
| TAMMY BRAWNER and<br>GREG BRAWNER, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | No. _____<br>Jury Demanded |
| v. | § <br> § | |
| SCOTT COUNTY, TENNESSEE, LISA<br>TERRY, TIFFANY BYRGE, AMY NICELY<br>DERRICK PHILLIPS, SHANE MASON,<br>unknown John and Jane Doe jail<br>officers, | § <br> § <br> § <br> § <br> § <br> § | |
| and | § <br> § | |
| ADVANCED CORRECTIONAL<br>HEALTHCARE ("ACH"), BRITTANY<br>BROWN, LPN, and BRITTANY<br>MASSENGALE, LPN, | § <br> § <br> § <br> § <br> § | |
| Defendants. | § | |

## COMPLAINT

Comes the Plaintiffs, and for cause of action against the Defendants herein would show as follows:

## I. PARTIES

1.      Plaintiff Tammy and Greg Brawner are husband and wife and residents of Scott County, Tennessee.

2. Defendant Scott County, Tennessee is a governmental entity created and existing in the State of Tennessee and can be served through its County attorney, John Beaty, 447 Howard H. Baker, Hwy, #3, Huntsville, TN 37756.

3. Defendant Advanced Correctional Healthcare is an Illinois corporation licensed to do business in Tennessee and can be served through its registered agent for service of process, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-9710 with its principal place of business at 3922 Barring Trace, Peoria, IL 61615-2500.

4. Upon information and belief, Defendants Lisa Terry, Tiffany Byrge, Amy Nicely, Derrick Phillips and Shane Mason were employed as jail guards/correction officers by Scott County at all times relevant to this action and violated Plaintiff's civil and constitutional rights as set forth hereinbelow. At all times hereto, these Defendants were acting under color of state law and are subject to this action pursuant to 42 U.S.C. §1983.

5. Upon information and belief, Defendants, Brittany Brown, LPN and Brittany Massengale, LPN were servicing the jail as employees of Advanced Correctional Healthcare, an independent medical provider for Scott County jail at all times relevant to this action and they, either individually or collectively, violated Plaintiff Tammy Brawner's civil and constitutional rights as set forth hereinbelow. At all times hereto and upon information and belief, these defendants were acting under color of state law and are subject to this action pursuant to 42 U.S.C. §1983.

2

## II. STATEMENT OF JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiffs' claims brought under Title

42 of the United States Code, section 1983. See 28 U.S.C. §§1331, 1343(a)(3).

7.      Venue exists in the United States District Court, Eastern District of

Tennessee at Knoxville, pursuant to 28 U.S.C § 1391 (b)(1) and/or (2).

8.      This Court has supplemental jurisdiction over Plaintiffs' state law claim

pursuant to 28 U.S.C. § 1367.

## III. STATEMENT OF FACTS

9.      On or about June 29, 2016, Plaintiff Tammy Brawner was late for a

court hearing in a case in which she had been charged with numerous charges

stemming from possession of controlled substances.

10.     As a result of her tardy appearance, a capias was issued by the Court,

her bond was forfeited, and she was taken into custody.

11.     Approximately twenty years prior, Plaintiff Tammy Brawner had been

involved in an accident that involved a head injury.

12.     In the aftermath of that head injury, Plaintiff Tammy Brawner suffered

a grand mal seizure, and as a result, her physician proscribed anti-seizure

medications.

13.     Thereafter, Plaintiff Tammy Brawner took her anti-seizure medications

on a daily basis and never suffered another seizure until the events complained of

herein occurred.

3

14.     Upon information and belief, when Plaintiff Tammy Brawner was brought into the Scott County Jail facility for intake, she was given a medical intake. During that time, she provided her prescription medication list, which included, inter alia, Neurontin and Topamax: anti-seizure/anti-convulsant medications.

15.     During the intake process, Plaintiff Tammy Brawner also explained in detail that she had to have her seizure and anticonvulsant medications which she had been taking for the past twenty years.

16.     During that medical intake, Plaintiff Tammy Brawner was asked if she had suffered any recent seizures and she replied she had not **because she took her Neurontin and Topamax medications daily**.

17.     In addition to the Neurontin and Topamax, Plaintiff Tammy Brawner's prescription list also included Lisinopril, a high blood pressure medication, Effexor, an anti-depressant medication, Suboxone, a medication for managing opiate-based pain pill addiction and withdrawal from the same, and Clonazepam, a benzodiazepine, an anti-anxiety medication.

18.     At no time during her detention in the Scott County Jail did the jail, its officers or medical personnel ever provide Plaintiff Tammy Brawner any of her medications, including the Neurontin and Topamax.

19.     The only medication provided Plaintiff Tammy Brawner by the jail, its officers or medical personnel was ibuprofen.

20.     Neurontin (gabapentin) is an anticonvulsant that stabilizes electrical activity in the brain by reducing the release of the "excitatory" neurotransmitter

4

glutamate. Topamax (topiramate) is also an anticonvulsant. This medication works on two neurotransmitters to reduce the risk of seizures: first, like Neurontin, it reduces the activity of glutamate; secondly, it increases the activity of the "suppressive" neurotransmitter gamma-aminobutyric acid (GABA). Taken together these potent medications are designed to prevent abnormal electrical activity in the brain by means of profound alterations in brain chemistry. The acute discontinuation of either medication will result in neurochemical imbalance, increased "excitability" of neurons, and a significant risk of recurrent seizures.

21.     Plaintiff Tammy Brawner was on three additional medications that affect the central nervous system. Effexor (venlafaxine) is used for the treatment of depression and anxiety disorders. This medication increases the levels of two neurotransmitters in the brain, serotonin and norepinephrine, and thereby also has a profound effect on brain chemistry. Effexor should not be discontinued without the supervision of a physician. Suboxone (buprenorphine and naloxone) is a combination of an opioid and an opioid receptor antagonist used in the treatment of narcotic addiction. It is designed to be weaned slowly so that patients can stop taking narcotics without suffering through an acute withdrawal syndrome. Narcotics generally suppress brain wave activity. Failure to take Suboxone as prescribed leads to a dramatic increase in the electrical activity of the brain and thus lowers the seizure threshold, predisposing susceptible individuals to convulsions.   Finally, Clonazepam is a benzodiazepine with sedative properties that works by decreasing abnormal electrical activity of the brain. It is commonly used alone or in combination

5

with other drugs to control certain types of seizures. Clonazepam is also used to relieve anxiety disorders such as panic attacks. The abrupt withdrawal of clonazepam can lead to an acute withdrawal syndrome and can be life threatening.

22.    In summary, Plaintiff Tammy Brawner was taking five different medications that affected the function of her brain.  The abrupt discontinuation of all five of them simultaneously led to an acute alteration in neurotransmitter levels, increased electrical activity, and significantly increased her vulnerability to catastrophic seizures.

23.    At some point during her detention, Tammy Brawner began having seizures, which, upon information and belief, was directly caused by these Defendants willful failure to provide Plaintiff her prescription medication.

24.    Upon information and belief, and according to descriptions provided Tammy Brawner by other females who were in the jail with her, Plaintiff suffered between 30 and 40 seizures while in the jail.

25.    Upon information and belief, and according to descriptions provided Tammy Brawner by other females who were in the jail with her, the jail officers or medical personnel thought Plaintiff was "faking it" and they continued to refuse to afford Tammy Brawner any medical care for her serious medical need, let alone adequate medical care.

26.    Upon information and belief, according to descriptions provided Plaintiff Tammy Brawner by other females who were in the jail with her, at one point, the defendant jail officers or medical personnel directed a jail officer to enter

6

the cell and remove Plaintiff to another room or cell. At that point, either one of these defendants or the unknown defendants thought she was "faking it" and they either directed that one of these defendants or one of the unknown defendants employ a "taser" weapon on Plaintiff Tammy Brawner.

27. At that point and upon information and belief, Plaintiff Tammy Brawner was "tased" because these individual defendants thought she was faking despite the fact that she was exhibiting physical manifestations consistent with experiencing a seizure.

28. Upon information and belief, these individual defendants tased Plaintiff Tammy Brawner to cause her severe pain and suffering in an effort to make her quit exhibiting the physical manifestations consistent with experiencing a seizure which they thought she was faking.

29. Upon information and belief, all the individually named defendants in this action had actual knowledge that Tammy Brawner had prescribed medications as of the date of her intake as set forth herein which none of these Defendants undertook to provide her. They were further all aware that some of these medications were to prescribed to her for the specific intent of preventing seizures.

30. Upon information and belief, all of the individually named defendants in this action had actual knowledge of the multiple seizures that Plaintiff Tammy Brawner experienced while in the jail.

31. From June 29, 2016 until July 7, 2016, Tammy Brawner experienced multiple seizures and the individual defendants during that time afforded her no

7

medical care whatsoever, let alone adequate medical care for the serious and emergent medical need of a seizure.

32.     On July 7, 2016, at approximately 1:30 to 2:00 a.m., Tammy Brawner's continuing physical manifestations as a result of her ongoing seizures became so emergent that the Scott County Jail finally transported her to the hospital[1]:  Lafollette Medical Center in Lafollette, Tennessee.

33.     The medical records relating to the ambulance transport to the hospital note Plaintiff Tammy Brawner experienced three additional seizures during transport.

34.     Upon arrival at the hospital, medical professionals stabilized Plaintiff Tammy Brawner and returned her to the jail later that day with a prescription for an anti-convulsant medication:  phenobarbital.

35.     Upon information and belief, no jail personnel and certainly none of the individual defendants informed the hospital that Plaintiff Tammy Brawner was on Suboxone, Effexor, Neurontin, Topamax and Clonazepam prior to coming to the jail on June 29 or that the jail and these individual defendants had refused to give her these medications.

36.     Upon information and belief, after Plaintiff Tammy Brawner was returned to the jail, she began experiencing more seizures sometime between July 8, 2016 and July 15, 2016.  During this time, the individual defendants were all aware

---

[1] The hospital conducted a toxicology screen which reveals that Plaintiff Tammy Brawner tested negative for Suboxone, Effexor, Neurontin, Topamax and Clonazepam.  A copy of the toxicology report is attached hereto as **Exhibit A**.

Brawner was exhibiting physical manifestations consistent with experiencing continued seizures but afforded her no medical care whatsoever, let alone adequate medical care for her emergent medical need.

37.     Because of Plaintiff Tammy Brawner's memory loss associated with the multiple seizures, it is unknown whether these defendant, the John and Jane Doe defendants or the jail provided Plaintiff Tammy Brawner the phenobarbital prescription she was sent back to the jail with by the hospital.

38.     Plaintiff Tammy Brawner had a history of traumatic head injury with a seizure disorder requiring multiple medications to control, including those noted previously herein. These medications, in combination, had a profound effect on her neurochemistry. The failure of the jail personnel to advise the emergency department at the hospital that Plaintiff had not received any of these medications since her incarceration was a significant contributing factor to her subsequent seizures and resulting brain damage. The hospital discharge instructions included only phenobarbital—an anti-convulsant that was presumably being **added** to Plaintiff's previously prescribed medications. Unfortunately, a single anti-convulsant was inadequate to suppress further seizure activity and Ms. Brawner subsequently developed status epilepticus, a life-threatening condition characterized by persistent, uncontrollable convulsions. The prolonged, untreated seizure activity occurring in the jail between June 29, 2016 and July 15, 2016 caused Plaintiff to suffer an irreversible brain injury and neurocognitive impairment.

9

39.     On July 15, 2016, based on her continued seizures, the Scott County Jail, through its officers and/or medical personnel, finally returned Tammy Brawner to the hospital:  LaFollette Medical Center in LaFollette, Tennessee.

40.     Upon arrival, Plaintiff Tammy Brawner's medical condition was so deteriorated that the medical personnel at LaFollette Medical Center medevac'd Tammy Brawner to Physicians Regional Medical Center in Knoxville, Tennessee.

41.     Physicians Regional Medical Center personnel were able to ultimately stabilize Plaintiff Tammy Brawner but not before she suffered permanent and debilitating injuries, including swelling of her brain, brain damage, cognitive difficulties, memory loss and neurologic damage.

42.     Upon information and belief, the injuries noted and complained of herein are permanent in nature and are a direct result of and proximately caused by these defendants' actions as noted herein, supra.

43.     Plaintiff Tammy Brawner has little to no memory of her time in the Scott County Jail after she began experiencing seizures.

44.     Many of the allegations in this Complaint have been made upon information and belief after a full investigation.  More precise allegations cannot be made at this time because despite the undersigned having served Scott County and the Scott County Sheriff with a preservation of evidence and open records act request letter, neither the County nor the Sheriff have responded as required by Tennessee law.  A copy of the correspondence sent to Scott County and the Sheriff is attached hereto as **Exhibit B**.

10

# IV. CAUSES OF ACTION

**A.** **42 U.S.C. §1983 FAILURE TO PROVIDE ADEQUATE MEDICAL CARE FOR A SERIOUS MEDICAL NEED TO BRAWNER, A PRE-TRIAL DETAINEE)**

### 1. Individual liability

45.     Plaintiffs hereby incorporate the preceding paragraphs of this complaint as if fully set forth herein.

46.     Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. In this case, all of the individual defendants as well as the John and Jane Doe defendants were acting under color of state law.

47.     The Fourteenth Amendment to the United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

48.     The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional constitutional requirements and protections as a pre-trial detainee has yet to be

11

convicted of any offense and she is therefore possessed of all her constitutional rights not necessarily afforded to convicted persons, including her right to the presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

49.     An individual officer engages in conduct in violation of the Due Process Clause of the Fourteenth Amendment where he or she demonstrates deliberate indifference to the serious needs of a pre-trial detainee such as Tammy Brawner by intentionally **denying** or **delaying** adequate medical care for said person. Deliberate indifference may be found to exist where an officer denies or delays obtaining treatment for a pre-trial detainee under facts and circumstances that would cause a layperson to conclude medical treatment was needed.

50.     Upon information and belief, on June 29, 2016, the individual defendants possessed actual knowledge that Tammy Brawner was on prescribed medications for serious medical needs, such as Neurontin and Topamax, the drugs she informed the intake officers she took multiple times per day as anti-seizure medication which she had been taking since her serious grand mal seizure some twenty years earlier.  Further, when these defendants inquired of Tammy Brawner whether she had recently experienced a seizure, she indicated she had not had one in many years precisely because she was taking the anti-seizure medications and warned said defendants that she was very concerned she may experience seizures if she were to not provided her anti-seizure medications.  Additionally, and continuing upon information and belief, prior to experiencing the first seizure and prior to

12

losing her memory, Tammy Brawner complained to all of these individual defendants and to certain John and Jane Doe Defendants that she needed to be provided her anti-seizure medications because in the absence of taking same, she could experience a significant seizure.

51.     Upon information and belief, Tammy Brawner had at all times prior to her first seizure in the jail informed these defendants that their failure to provide her the prescribed medications could result in her experiencing a significant seizure.

52.     Upon information and belief, when Tammy Brawner began experiencing significant seizures, these defendants failed to provide her any medical care whatsoever and instead sent in an unknown defendant jail officer to use a "taser" on Tammy Brawner because they thought she was faking her seizures.

53.     Upon information and belief, all of these defendants had actual knowledge of the physical signs and symptoms being exhibited by Tammy Brawner as a result of these seizures.

54.     Upon information and belief, these defendants had actual knowledge of but disregarded the serious risk of injury to Tammy Brawner by failing to provide her medical care for a serious medical need, until they eventually realized, numerous seizures later, that she was not "faking it."

55.     Upon information and belief, these defendants intentionally withheld vital information from the first responders and the hospital personnel after sending Plaintiff Tammy Brawner to the hospital on July 7, 2016 that she arrived at the jail on prescribed medications of Suboxone, Effexor, Neurontin, Topamax and Clonazepam

13

and that the jail and these defendants had failed to provide her these medications the entire time she was detained.

56.    These defendants and the John and Jane Doe defendants had actual knowledge that Plaintiff Tammy Brawner was exhibiting physical manifestations consistent with the medical emergency of a seizure.  These Defendants concluded Plaintiff was "faking it," disregarded the risk to her health that they perceived, and refused to afford her any medical care whatsoever, let alone adequate medical care. Any reasonable layperson observer would have instantly recognized that Plaintiff was in medical distress and would have taken action to afford Plaintiff medical care.

57.    Based on the foregoing, these defendants and certain John and Jane Doe Defendants exhibited deliberate indifference to Tammy Brawner's serious need for adequate medical care which directly caused her injuries as described herein, and they are therefore liable to her pursuant to the provisions of 42 U.S.C § 1983.

58.    Plaintiffs therefore sue these defendants and the John and Jane Doe defendants for their deliberate indifference to and violation of Tammy Brawner's right to be provided adequate medical care for a serious medical need. Plaintiffs seek the following relief:

   a.   For medical expenses (past, present and future);

   b.   lost wages;

   c.   loss of earning capacity;

   d.   pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

14

e.  Loss of consortium;

f.  For any and all other damages allowable under state or federal law;

g.  Attorney's fees pursuant to 42 U.S.C. § 1988;

h.  Costs of this action;

i.  Discretionary costs.

### 2.  Municipal liability

#### i.  Scott County, Tennessee

59.    Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

60.    The United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

61.    The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional constitutional requirements and protections as a pre-trial detainee has yet to be convicted of any offense and she is therefore possessed of all her constitutional rights not necessarily afforded to convicted persons, including her rights to the

Case 3:17-cv-00108-JRG-HBG   Document 1   Filed 03/24/17   Page 15 of 27   PageID #: 15

presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

62.     A governmental entity may be held liable based upon its officers' deliberate indifference to and violation of any citizen's constitutional rights where a custom, policy, or procedure of the municipality is found to be the proximate cause of the constitutional violation.

63.     Additionally, a governmental entity may be held liable where its supervisory officials and officers ratify an illegal action of lower-tier officers or employees or where the officials and officers at the executive level take actions that themselves constitute deliberate indifference and are the driving force behind the constitutional injury.

64.     Upon information and belief, Scott County has a history of failing to provide adequate medical care to inmates and pretrial detainees housed at the Scott County Jail.    This history constitutes a custom which caused the deliberate indifference constitutional violations of the individual defendants and the John and Jane Doe defendants.  But for this unconstitutional custom, the individual defendants and the John and Jane Doe defendants would not have exhibited deliberate indifference to Tammy Brawner's serious need for adequate medical care but would have provided her the necessary medications, including Neurontin and Topamax, and immediately sent her to the hospital or otherwise afforded her adequate medical care once she began experiencing the first seizure.

16

65.     Upon information and belief, Scott County through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates adequate medical care for serious medical needs.    For example, and upon information and belief, but for Scott County's improper policies and procedures, it is hard to fathom how (1) Tammy Brawner was never provided her anti-seizure medications, Neurontin and Topamax, which the county, through its officers and medical personnel, knew she was taking based on a prior grand mal seizure, (2) no one in the jail provided her any medical care whatsoever while she experienced as many as thirty seizures, deciding to "taser" her instead as the officers or medical personnel through she was "faking it," and (3) the evidence of Brawner's medication list and the Jail's failure to provide any of those medications to her was withheld from the hospital on July 7, 2016 when the Jail and its officers and personnel finally decided she was not "faking it."

66.     Scott County's policies and procedures as noted herein caused the deliberate indifference constitutional violations of the individual defendants and the John and Jane Doe defendants. But for these unconstitutional policies and procedures, the individual defendants and the John and Jane Doe defendants would not have exhibited deliberate indifference to Tammy Brawner's serious need for adequate medical care but would have instead (1) provided her the medications she was taking, including the Neurontin and Topamax, (2) provided her adequate medical care as soon as she began experiencing seizures and (3) told the hospital of

the complete medications list that Tammy Brawner presented with on intake on June 29, 2016 and the fact that the Jail had willfully refused to provide her any of those medications.

67.     All of Plaintiff Tammy Brawner's injuries and damages were proximately caused by the County's unconstitutional customs, policies and procedures.

68.     Based on the foregoing, Plaintiffs therefore sue Scott County for its customs, policies and procedures which caused the individual defendants and the John and Jane Doe defendants to exhibit deliberate indifference to and violate Tammy Brawner's right to be provided adequate medical care for a serious medical need. Plaintiffs seek the following relief:

    a.  For medical expenses (past, present and future);

    b.  lost wages;

    c.  loss of earning capacity;

    d.  pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

    e.  loss of consortium;

    f.  For any and all other damages allowable under state or federal law;

    g.  Attorney's fees pursuant to 42 U.S.C. § 1988;

    h.  Costs of this action;

    i.  Discretionary costs.

## ii.  Advanced Correctional Healthcare

69.  Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

70.  For purposes of Section 1983, ACH acted under color of state law in providing medical care to pre-trial detainees such as McGaw.

71.  Upon information and belief, ACH was the contracted medical provider for providing medical care to pre-trial detainees and inmates in the Scott County Jail at all times relevant hereto.

72.  Upon information and belief, Defendants Brown and Masssengal are employees of ACH.

73.  Upon information and belief, ACH has a history of failing to provide adequate medical care to inmates and pretrial detainees.  These prior incidents constitute a custom which caused the deliberate indifference constitution violations of Defendants Brown and Massengale.  But for this unconstitutional custom, Defendants Brown and Massengale would not have violated Plaintiff Brawner's constitutional rights but would rather have afforded her adequate medical care for her serious medical needs.

74.  Upon information and belief, ACH through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates adequate medical care for serious medical needs.  For example, and upon information and belief, but

19

for ACH's improper policies and procedures, it is hard to fathom how (1) Tammy Brawner was never provided her anti-seizure medications, Neurontin and Topamax, which ACH, through its employees Brown and Massengale, knew she was taking based on a prior grand mal seizure, (2) Brown and Massengale failed to provide Brawner any medical care whatsoever while she experienced as many as thirty seizures, deciding to acquiesce in the unknown defendants use of a "taser" on her instead since they thought she was "faking it," and (3) Brown and Massengale failed to inform the hospital on July 7, 2016 of Brawner's medication list and their failure to provide any of those medications to her. ACH's policies and procedures as noted herein caused the deliberate indifference constitutional violations of Defendants Brown and Massengale. But for these unconstitutional policies and procedures, Defendants Brown and Massengale would not have exhibited deliberate indifference to Brawner's serious need for adequate medical care.

75. ACH's policies and procedures as noted herein caused the deliberate indifference constitutional violations of defendant's Brown and Massengale. But for these unconstitutional policies and procedures, Brown and Massengale would not have exhibited deliberate indifference to Tammy Brawner's serious need for adequate medical care but would have instead (1) provided her the medications she was taking, including the Neurontin and Topamax, (2) provided her adequate medical care as soon as she began experiencing seizures and (3) told the hospital of the complete medications list that Tammy Brawner presented with on intake on June

Case 3:17-cv-00108-JRG-HBG   Document 1   Filed 03/24/17   Page 20 of 27   PageID #: 20

29, 2016 and the fact that the Jail had willfully refused to provide her any of those medications.

76.    All of Plaintiff Tammy Brawner's injuries and damages were proximately caused by the County's unconstitutional customs policies and procedures.

77.    Plaintiff therefore sues ACH and seeks the following relief:

    a.  For medical expenses (past, present and future);

    b.  lost wages;

    c.  loss of earning capacity;

    d.  pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

    e.  loss of consortium;

    f.  For any and all other damages allowable under state or federal law;

    g.  Attorney's fees pursuant to 42 U.S.C. § 1988;

    h.  Costs of this action;

    i.  Discretionary costs.

**B.**    **42 U.S.C. §1983 (Fourteenth Amendment Violation/Excessive Force)**

    **1.**    **Individual liability**

78.    Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

21

79. Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. In this case, all of the individual defendants as well as the John and Jane Doe defendants were acting under color of state law.

80. The Due Process Clause of the Fourteenth Amendment prohibits the individual defendants complained of herein from using excessive force against a pretrial detainee of the Scott County Jail.

81. Excessive force under the Fourteenth Amendment is objectively unreasonable conduct that, given the facts and circumstances, would "shock the conscience" and amount to an arbitrary exercise of governmental power.

82. Upon information and belief, either one or more of these defendants or one or more of the John and Jane Doe defendants removed Plaintiff from the group cell and took her to another room or cell where they then employed the use of a "taser" on Plaintiff because they believed that she was faking the physical manifestations of experiencing a seizure. These defendants decided, instead of affording Plaintiff adequate medical care for an ermegent medical need, to user the "taser" on Plaintiff in order to make her stop "faking it." This conduct is utterly reprehensible and truly shocks the conscience. If this conduct does not constitute the arbitrary exercise of governmental power, it is difficult to fathom what does.

83. Any reasonable observer, given the facts and circumstances of this "taser" incident, would come to the inescapable conclusion that these defendants or

22

the John and Jane Doe defendants' conduct was objectively unreasonable so as to shock the conscience of said observer. Any reasonable observer would likewise conclude that this conduct constituted an arbitrary and capricious exercise of governmental power. Thus, this conduct constitutes excessive force in violation of the Due Process Clause of the Fourteenth Amendment and one or more of these defendants or one or more of the John and Jane Doe defendants are liable to the Plaintiff for her damages resulting from the use of the "taser."

84.     Plaintiff Tammy Brawner therefore sues one or more of the individual defendants and one or more of the John and Jane Doe defendants for their deliberate indifference to and violation of her right to be free from excessive force. She seeks the following relief:

    a.  Economic damages for the cost of past and future medical care, lost wages, loss of earning capacity, and non-economic damages for pain and suffering, mental and emotional anguish, permanent impairment and disabilities, and loss of enjoyment of life;

    b.  Attorney's fees pursuant to 42 U.S.C. §1988;

    c.  Discretionary costs;

    d.  Court costs.

### 2. Municipal liability (Scott County)

85.     Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

23

86.     The Due Process Clause of the Fourteenth Amendment prohibits Defendant Scott County, Tennessee from having any custom, policy, or procedure which would constitute the proximate cause of its officers' deprivation of any citizen's constitutional rights. Where such a custom, policy, or procedure has resulted in its officers' deprivation of a citizen's constitutional rights under title 42 of the United States Code section 1983, sovereign immunity is removed, thereby allowing the citizen to recover his damages in a suit against the municipality.

87.     Upon information and belief, Scott County is liable to Plaintiff pursuant to 42 U.S.C. §1983 based on its history of prior incidences where its officers used excessive force against inmates and pre-trial detainees; said history of similar incidences constitutes a custom thereby rendering the county liable.

88.     Upon information and belief, Scott County failed to adequately train its officers for proper tactics and procedures when said officers encounter pre-trial detainees who are experiencing seizures. For example, instead of immediately recognizing the Plaintiff was in medical distress and medically emergent, the individual defendants thought Plaintiff was "faking it."   But for the improper training, these individual officers would have immediately called for medical assistance and transported Plaintiff to the hospital.

89.     Upon information and belief, Scott County also failed to adequately train its officers on the use of a "taser" weapon such that the same should never be used to attempt to make a pre-trial detainee stop "faking it."  But for the improper

24

training in this regard, the "taser" would not have been used on Plaintiff Tammy Brawner.

90. In this case, use of force in employing the "taser" by one or more of the individual defendants or one or more of the John and Jane Doe Defendants against the clearly medically emergent Plaintiff evidences a complete lack of training in proper procedures and methods related to dealing with individual such as this Plaintiff and in the use of a "taser" weapon on such a person in an attempt to get said person to stop "faking it" when said person is in fact medically emergent and not faking anything.

91. Scott County is liable to the Plaintiff because its customs, policies, and procedures were the proximate cause of the individual defendants and the John and Jane Doe defendants' deliberate indifference to the Plaintiff's constitutional right to be free from the use of excessive force.

92. Plaintiff therefore sues Scott County and seeks the following relief:

    e. Economic damages for the cost of past and future medical care, lost wages, loss of earning capacity, and non-economic damages for pain and suffering, mental and emotional anguish, permanent impairment and disabilities, and loss of enjoyment of life; and

    f. Attorney's fees pursuant to 42 U.S.C. §1988;

    g. Discretionary costs;

    h. Court costs.

**C.** **Tenn. Code Ann. § 29-20-202 et. seq. (TGTLA – Negligence)**

93.   Plaintiffs hereby incorporate the preceding paragraphs of this complaint as if fully set forth herein.

94.   Scott County was at all times hereto responsible for the operation and the supervision of the Scott County Jail and its employees and third party medical providers.

95.   Pursuant to the Tennessee Governmental Tort Liability Act, Scott County, and individual defendants and the John and Jane Doe Defendants owed Tammy Brawner a duty to provide her adequate medical care while she was detained and not to use excessive force on her.

96.   These Defendants breached these duties of care as set forth herein and are therefore liable to the Plaintiffs pursuant to the TGTLA.

97.   These Defendants are negligent per se for violating Tennessee Code Annotated § 41-2-109(5).

98.   These Defendants are also negligent per se for not complying with various provisions of state-established minimum standards for jail facilities.

99.   These Defendants' breaches of the duties noted herein proximately caused Plaintiffs' injuries and damages.

100.   Plaintiffs sue these Defendants under the TGTLA for these reasons and all the reasons previously set forth herein and seek money damages for all categories previously set forth herein, supra, in the maximum amount allowed under said law.

## VI.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs respectfully request this Honorable Court grant relief as follows:

a.  Issue process, requiring the Defendants to answer this Complaint.

b.  Empanel a jury to try this cause.

a.  Award compensatory damages against all Defendants pursuant to the claims brought pursuant to 42 U.S.C. § 1983 in the amount of $2,500,000.00.

b.  Award compensatory damages against all Defendants in the maximum amount allowed under the Tennessee Governmental Tort Liability Act.

c.  Award Plaintiffs attorney's fees pursuant to 42 U.S.C. § 1988.

d.  Award costs of this action including discretionary costs.

e.  Award any other or further relief to which she may be entitled.

Respectfully submitted this **24th** day of **March, 2017**.

**Butler, Vines and Babb, PLLC**

*/s/ Darren V. Berg, Esq.*
**Darren V. Berg (BPR 23505)**
**Weldon E. Patterson (BPR 13608)**
2701 Kingston Pike
P.O. Box 2649
Knoxville, TN 37901-2649
865/637-3531 (phone)
865/637-3385 (fax)
dberg@bvblaw.com
*Attorney for Plaintiffs*

27