UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TAMMY M. BRAWNER and, <br> GREG BRAWNER, <br><br> Plaintiffs, <br><br> v. <br><br> SCOTT COUNTY, TENNESSEE, LISA TERRY, <br> TIFFANY BYRGE, AMY NICELY, DERRICK <br> PHILLIPS, SHANE MASON, unknown John and <br> Jane Doe jail officers, <br><br> and <br><br> ADVANCED CORRECTIONAL HEALTHCARE <br> ("ACH"), BRITTANY BROWN, LPN, and <br> BRITTANY MASSENGALE, LPN, <br><br> Defendants. | No. 3:17-CV-108 |

## MEMORANDUM OPINION and ORDER

This civil rights action under 42 U.S.C. § 1983 alleges that Plaintiff Tammy M. Brawner was denied medical care for a seizure disorder and subjected to excessive force while she was a pretrial detainee housed in the Scott County jail [Doc. 1]. Before the Court are a motion for judgment on the pleadings and a supporting brief filed by Defendants Lisa Terry, Tiffany Byrge, Amy Nicely, Derrick Phillips, Shane Mason, and Brittany Brown [Docs. 86-87]. Defendants argue that the second amended complaint [Doc. 64], the operative pleading in this lawsuit, "fails to establish that any individual Defendants engaged in any act warranting inclusion in this action" and that, even if Plaintiffs have pled a constitutional violation, Defendants are entitled to summary judgment in their individual capacities on the basis of qualified immunity because of the same

alleged pleading deficiency [Doc. 87 at 5, 9]. Defendants also request that the supplemental state law claims be dismissed without prejudice to permit the claims to be refiled in state court [*Id.* at 13-14]. Plaintiffs responded in opposition to Defendants' dispositive motion [Doc. 92], maintaining that they adequately have stated claims for denial of medical care and unreasonable force and that their supplemental state law claims should not be dismissed. Plaintiffs, however, did not address Defendants' assertion of qualified immunity. Defendants replied to Plaintiffs' response [Doc. 98]. Thus, Defendants' motion for judgment on the pleadings [Doc. 86] is ripe for disposition and will be **DENIED.**

## I. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a motion brought under Federal Rule of Civil Procedure 12(b)(6). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). The liberal pleading standard in Federal Rule of Civil Procedure 8(a)(2), *see Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), governs motions to dismiss and requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "[f]actual allegations must be enough to rise above the speculative level," detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. Yet, a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal

2

theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. V. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In deciding a Rule 12(b)(6) motion to dismiss or a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679. The plausibility standard, in simple terms, conveys "what a plaintiff must plead in order to state a claim." *Twombly*, 550 U.S. at 554-444.

## II. PLAINTIFFS' ALLEGATIONS

Turning first to the medical claims at issue in this Rule 12(c) motion, the second amended complaint [Doc. 64] contains the following assertions against the moving Defendants, all Scott County Jail guards/correctional officers:

> 16. An Inmate Medical Form for [Plaintiff] . . . lists medications [including clonazepam (Klonapin) [and] gabapentin (Neurontin). The Gabapentin and Clonazepam are anticonvulsants.
>
> 17. During the intake process, [Plaintiff] . . . explained in detail that she had to have her anticonvulsant medications[,]which she had been taking for the past twenty years.
>
> …
>
> 19. In addition to the gabapentin and clonazepam, [Plaintiff's] home medication list also included escitalopram—an anti-depressant medication—and Suboxone—

3

a medication for managing opiate-based pain pill addition and withdrawal. Both of
these medications affect the function of the brain.

20. At no time during her detention in the Scott County Jail did the jail, its officers,
or medical personnel ever provide [Plaintiff] any of her home medications,
including the gabapentin and clonazepam.

…

25. At some point during her detention at the Scott County Jail, [Plaintiff] began
experiencing seizures, which . . . were directly caused by Defendants['] willful
failure to provide [Plaintiff] her home medications.

26. From June 29, 2016 until July 7, 2016, . . . [Plaintiff] suffered between 30 and
40 seizures while in custody.

…..

31. [T]he Scott County Jail defendants . . . had actual knowledge that [Plaintiff]
had prescribed medications as of the date of her intake . . ., which none of these
Defendants undertook to provide her. They were further all aware that some of
these medications were prescribed to her for the specific purpose of preventing
seizures.

32. [A]ll of the Defendant jailers . . . at the Scott County Jail had actual knowledge
of the multiple seizures that [Plaintiff] experienced while she was incarcerated.

The second amended complaint, in paragraphs 33 through 39, goes on to allege that from June 29, 2016, until July 7, 2016, Plaintiff experienced multiple seizures and that her condition became so severe she was taken by ambulance to the Emergency Department at Lafollette Medical Center for evaluation and treatment, suffering three seizures enroute and arriving at 2:27. Plaintiff was evaluated, medically tested, administered medication, and discharged at 5:14, with a prescription for medication. The allegations resume in paragraph 40.

40. Discharge paperwork lists all four home medications; however, the jailers . . .
at Scott County Jail failed to properly follow these discharge instructions, and/or,
to the extent there were any discrepancies in these instructions, the jailers . . . failed
to clarify them.

4

. . .

47. Defendant Corrections Officer Amy Nicely called Defendant Capparelli on July 11, 2016, to report "Inmate having seizures." … [N]o medical assessment was performed by Defendant Capparelli; his telephone response was recorded: "Per Dr. Capparelli—said to give inmate a dose of medicine Dilantin 200 mmg." [Plaintiff] continued to have seizures.

…

51. [O]n July 15, 2016 . . . the seizures persisted unabated and [Plaintiff] was finally transported to the Emergency Department at Lafollette Medical Center.

52. [T]he jailers . . . were still suspicious that [Plaintiff] was "faking it" as evidenced by documentation in the medical record from Lafollette Medical Center that day: "EMS states patient having 13 seizures which were thought to be pseudoseizures whle incarcerated at Scott County Jail."

…

61. Since the improper treatment [Plaintiff] received from the named Defendants, she has undergone neuropsychiatric testing, which has revealed cognitive injury consistent with prolonged, untreated seizure activity.

…

67. [O]n June 29, 2016, the individual defendants possessed actual knowledge that [Plaintiff] was on prescribed medications for serious medical needs. . . . [P]rior to experiencing the first seizure and prior to losing her memory, [Plaintiff] complained to all of these individual defendants . . . that she needed to be provided her anti-seizure medications because in the absence of taking same, she could experience a significant seizure.

. . .

69. [W]hen [Plaintiff] began experiencing significant seizures, these defendants failed to provide her any medical care whatsoever. . . .

…

73. These Defendants . . . had actual knowledge that Plaintiff . . . was exhibiting physical manifestations consistent with the medical emergency of a seizure. These Defendants . . . disregarded the risk to her health that they perceived and refused to afford her any medical care whatsoever, let alone adequate medical care. Any reasonable layperson observer would have instantly recognized the Plaintiff was in medical distress and would have taken action to afford Plaintiff medical care.

5

> 74. Based on the foregoing, these defendants . . . exhibited deliberate indifference to [Plaintiff]'s serious need for adequate medical care which directly caused her injuries as described herein, and they are therefore liable to her pursuant to the provisions of 42 U.S.C. § 1983.

[Doc. 64 at 4-7, 12-15].

Next, in connection with Plaintiff's unreasonable force claim,[1] the second amended complaint alleges as follows:

> 99. [E]ither one or more of these defendants . . . removed Plaintiff from the group cell and took her to another room or cell where they then employed the use of a "taser" on Plaintiff because they believed she was faking the physical manifestations of experiencing a seizure . . . in order to make her stop "faking it."
>
> 100. Any reasonable observer . . . would . . . conclu[de] that these defendants['] . . . conduct was objectively unreasonable. . . . Thus, this conduct constitutes excessive force in violation of the Due Process Clause of the Fourteenth Amendment and one or more of these defendants . . . are [sic] liable to the Plaintiff for her damages resulting from the use of the "taser."
>
> 101. [P]laintiff … sues each of the above named jailers . . . for their violation of [Plaintiff]'s right to be free from excessive force [and] seeks . . . damages for pain and suffering, mental and emotional anguish, permanent impairment and disabilities, and loss of enjoyment of life[.]

[*Id.* at 22-23].

### III. LAW and ANALYSIS

The Eighth Amendment protects prisoners from the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment serves as the primary source of protection for a convicted prisoner, *Bell v. Wolfish*, 441 U.S. 520, 536–37 n.16 (1979), whereas a pretrial detainee is entitled to same protections under the due process clauses of the Fifth and Fourteenth Amendments. *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th

---

[1] The allegations set forth above that inform Plaintiff's medical claim likewise provide context for her unreasonable force claim.

Cir. 2016). The Court refers to the Eighth Amendment in its discussion of Plaintiff's medical claims since the same analysis applies to a pretrial detainee's Fourteenth Amendment due process right to medical care. *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

An Eighth Amendment claim is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" deprivation, and (2) a subjective component, which requires her to show a sufficiently culpable state of mind—one of "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). A serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). A sufficiently culpable mental state—one of deliberate indifference—may be evinced by showing that a defendant official knows of, but disregards, an excessive risk to an inmate's health. *Farmer*, 511 U.S. at 837. That is, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

Unlike a medical claim, a pretrial detainee's assertion of excessive force is controlled by the Fourteenth Amendment which requires that the complainant first establish that "the use of force is deliberate—i.e., purposeful or knowing" and, second, that the use of force is, from the perspective of a reasonable officer, objectively unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). As to the second prong of an excessive force claim, the pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Id.* at 2473-74.

7

The Court now examines whether Plaintiffs' second amended complaint is plausible, that is, whether it pleads sufficient facts to permit a reasonable inference that Defendants are liable for the alleged misconduct. If it does, Plaintiffs satisfy the antecedent pleading requirements in *Twombly* and *Iqbal* and overcome Defendants' motion for judgment on the pleadings.

**A.     Medical Claims**

Though Defendants' dispositive motion does not question that Plaintiff has alleged a serious medical need, the Court finds that she has done so by claiming that she suffered from seizures, took medications that affected brain function to manage her opiate-based pain-pill addiction and withdrawal from such, did not receive her medications, experienced multiple seizures while in pretrial detention at the Scott County Jail, and thereby sustained in permanent injury. *Esch v. Cnty. of Kent*, 699 F. App'x 509, 516 (6th Cir. 2017) (holding that a pretrial detainee who had a history of seizures, was on medication to control the seizures, and presented an increased risk of a seizure occurring "unquestionably suffered from a serious medical condition requiring treatment"); *see also Parsons v. Caruso*, 491 F. App'x 597, 601 (6th Cir. 2012) ("The defendants do not contest that [the plaintiff] had a sufficiently serious medical need—he suffered from a seizure disorder, he did not have his anti-seizure medication for at least two days and possibly for the entire time he was at [the prison], and he ultimately died from a seizure.").

The Court also concludes that Plaintiff has alleged plausible claims of deliberate indifference, as that state of mind has been described in relevant precedent. *See Farmer*, 511 U.S. at 836.[2] As set forth above, *see* part II.A, Plaintiffs have asserted that "the Scott County jail

---

[2] In *Richmond v. Huq*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit commented that the "shift in Fourteenth Amendment deliberate indifference jurisprudence [brought about by *Kingsley*] calls into serious doubt whether" a pretrial detainee raising a claim for deliberate indifference to serious medical needs must allege a defendant's subjective awareness and wanton disregard of such needs, but the *Huq* court did not decide the issue. *Id.* at 938-39 n.3 (alteration added). As did the Sixth Circuit, this Court takes account of *Kingsley* but finds it unnecessary to

8

defendants," including the moving Defendants, had actual knowledge of Plaintiff's prescribed medications and knew that those medications were prescribed to prevent Plaintiff's seizures because she complained to all these Defendants that she needed her anti-seizure medications. Plaintiff further asserts that she explained to those Defendants that going without her prescribed medications could cause her to experience significant seizures and that they did not give her the medications. Plaintiff likewise asserts that she began experiencing seizures due to the lack of medication, that "all of Defendant jailers" knew that Plaintiff was experiencing multiple seizures, that they provided no medical care, and that she sustained "cognitive injury consistent with "prolonged, untreated seizure activity."

Thus, the second amended complaint meets the modest pleading requirement of presenting "a short and plain statement showing that the pleader is entitled to relief" on the medical claims asserted. *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008) (observing that pleading-stage dismissals are gauged only by whether the complaint states a claim upon which relief can be granted) (citing Fed. R. Civ. P. 8(a) and 12(b)(6)); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 (observing that, under Rule 8(a)(2), Federal Rules of Civil Procedure, a plaintiff "need only give the defendant fair notice of what the … claim is and the grounds upon which it rests").

## B.   Excessive Force Claims

Defendants make the same argument as to Plaintiff's failure to identify each Defendant personally and explain what specific part that Defendant played in the excessive force incident. Plaintiff's failure in this regard, so say Defendants, is because "no one" tased her [Doc. 87 at 5].

---

discuss the issue further because the parties have not cited *Kingsley* or addressed its potential effect. In addition, as explained in this opinion, Plaintiff has satisfied the more stringent "deliberate indifference" standard in *Farmer* and *Estelle*.

9

In the second amended complaint, Plaintiff alleges that "either one or more of these defendants" removed her from her cell, and employed a taser on her to stop her from engaging in conduct that they perceived to be faking the physical manifestations of a seizure. Plaintiff further alleges that Defendants' actions were objectively unreasonable and constituted unreasonable force, and that each named jailer violated her right to be free from excessive force. Plaintiff also asks for damages for resulting harms, including permanent impairment and disabilities [Doc. 64 at 22].

Once again, the Court finds that Plaintiff has met the modest pleading requirement for stating an excessive force claim. *Iqbal*, 556 U. S. at 669 (recognizing that "legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations"). Plaintiff's allegations of fact need only to give the moving Defendants "fair notice of what the ... claim is and the grounds upon which it rests" and these allegations of excessive force do so. Plaintiff's factual contentions make out a deliberate, purposeful use of force that was not rationally related to a legitimate nonpunitive governmental purpose.

## IV.    QUALIFIED IMMUNITY

The moving Defendants also assert that they are entitled to qualified immunity. The qualified immunity doctrine is designed to protect governmental officials from suit in their individual capacities where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law").[3]

---

[3] The second amended complaint does not allege the capacity in which Plaintiffs are suing the moving Defendants, whether in their official capacities, individual capacities, or both. A suit brought against a public official will not be construed as seeking damages against that defendant in his personal capacity unless the claim for individual liability is clearly and definitely set forth in the pleading. *See Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir. 1995). The designation of

Qualified immunity means "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is a means of balancing "'the need to hold public officials accountable when they exercise power irresponsibly' against 'the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Middaugh v. City of Three Rivers*, 684 F. App'x 522, 526 (6th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Qualified immunity is an affirmative defense and, once raised, a plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)).

When a defendant asserts qualified immunity, a court must determine: "(1) whether the facts alleged by the plaintiff make out the violation of a constitutional right and (2) whether the right at issue was 'clearly established' at the time of the alleged violation." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). A court may consider either step first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Pearson*, 555 U.S. at 236). "[I]f the

---

individual capacity need not be explicit—though, of course, that is preferable—so long as the pleadings and other filed documents provide sufficient notice to a defendant that he is being sued as an individual. *Moore v. City of Harriman,* 272 F.3d 769 (6th Cir. 2001). Here, because the moving Defendants assert a qualified immunity defense and because Plaintiff seeks damages, the Court finds that they received sufficient notice that they are sued in their personal capacities. *Id.* at 772 n.1 (indicating that the "course of proceedings" test considers factors such as a plaintiff's requests for monetary and punitive damages and a defendant's assertion of qualified immunity).

11

plaintiff cannot make both showings, the officer is entitled to qualified immunity." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citing *Pearson*, 555 U.S. at 236). The Court must assume, in making the qualified immunity determination, that all record-supported allegations presented by Plaintiffs are true. *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017). The Court is also mindful that, at the pleading stage "there is no heightened pleading requirement ... for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity." *Back*, 537 F.3d at 558 (quoting *Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir. 2002))

A qualified immunity issue may be approached by determining initially whether the facts alleged make out a constitutional violation. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014). The Court has already determined that Plaintiff has plausibly alleged, taking her allegations as true, that she was denied medical care as a pretrial detainee and was subjected to excessive force in violation of the Fourteenth Amendment. Thus, Plaintiffs have satisfied the "constitutional violation" prong of the qualified immunity analysis.

With respect to the "clearly-established" prong of qualified immunity, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "T]he dispositive question is whether the violative nature of *particular* conduct is clearly established," with the inquiry to "be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original) (citations and internal quotations omitted).

12

A pretrial detainee's right to medical care was clearly established in 2016. *Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 483 (6th Cir. 2014) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)) (listing cases); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). More particularly, where pretrial detainees disclose to a defendant that they are taking prescribed medications for serious maladies, explain their need to be provided the medications, are not furnished with those medications, report that they are experiencing the malady that the medications are intended to control, courts have found sufficient allegations of violations of their right to medical care. *See e.g., Estate of Carter*, 408 F.3d at 310, 313 (finding that deliberate indifference sufficiently asserted where a defendant knew that the plaintiff "was exhibiting the classic symptoms of an impending heart attack, knew she had cried for help, and believed that she was three days behind in taking her heart medication"); *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (finding a sufficient showing of deliberate indifference where a diabetic pretrial detainee told officers she needed insulin for her condition, was past due for her current dose, and described her condition in detail).

Likewise, a pretrial detainee's right not to be subjected to excessive force was clearly established well before the questioned force was employed against Plaintiff in 2016. *Morabito v. Holmes*, 628 F. App'x 353, 358 (6th Cir. 2015) (observing that a pretrial detainee's constitutional right to be free from objectively unreasonable force " was clearly established long ago"). "Even without precise knowledge that the use of the [T]aser would be a violation of a constitutional right, [the defendant officer] should have known based on analogous cases that [his] actions were unreasonable." *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (first and third alteration in original) (internal quotation marks omitted) (quoting *Landis v. Baker*, 297 F. App'x 453, 463 (6th Cir. 2008)); *see also Thomas v. Plummer*, 489 F. App'x 116, 127–28 (6th Cir. 2012)

13

(finding a right not to be tased where the individual is not resisting); *Kent v. Oakland Cnty.*, 810 F.3d 384, 396 (6th Cir. 2016) (observing that "since mid-2005, [t]he general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued, is not told he is under arrest, and is not resisting arrest") (citation omitted) (internal quotation marks omitted).

Although the Court has been unable to find a case with the exact same fact pattern (using a taser on a pretrial detainee who is having a seizure), the Supreme Court has made it "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Moreover, the Sixth Circuit has explained that "a] defendant is not entitled to summary judgment on the basis of qualified immunity simply because the courts have not "agreed upon the precise formulation of the [applicable] standard." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (quoting *Saucier,* 533 U.S. at 202–03). "Thus, even if it were unclear whether the Fourth or Fourteenth Amendment governs [Plaintiff's] excessive force claims, the legal norms underlying those claims were nevertheless clearly established." *Id.* (listing cases).

Plaintiffs have plausibly alleged the violation of rights that were clearly established in 2016, Defendants are not entitled to qualified immunity, and their request for judgment on the pleadings based on qualified immunity will be **DENIED**.

## V. SUPPLEMENTAL CLAIMS

Because Plaintiffs' federal claims remain for disposition, the Court will **DENY** Defendants' request to dismiss the supplemental state-law claims without prejudice so that such claims can be refiled in state court [Doc. 87 at 13-14]. *See* 28 U.S.C.A. § 1367(a) (providing, in relevant part, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

14

action within such original jurisdiction that they form part of the same case or controversy"); *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639 (2009) ("With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise.") (citing 28 U.S.C. §§ 1367(a), (c)).

## VI. CONCLUSION

Based on the above reasoning, the Court finds that Defendants' motion for judgment on the pleadings [Doc. 86] is without merit and hereby **DENIES** the motion in its entirety.

**ENTER:**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
