UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TAMMY M. BRAWNER and GREGORY BRAWNER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:17-CV-00108-JRG-HBG |
| SCOTT COUNTY, TENNESSEE, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Scott County, Tennessee's, motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). For the reasons herein, and for the reasons that the Court has already explained on the record at trial, it will grant Scott County's motion.

## I.    BACKGROUND

On May 7, 2019, the Court began a jury trial in this case, in which Plaintiff Tammy Brawner—a former pretrial detainee at the Scott County Jail—maintained that she suffered multiple seizures at the jail and that the jail's correctional officers, in response to her seizures, tased her and did not provide her with adequate medical care. More specifically, she brought three claims against Scott County: (1) a municipal liability claim under 42 U.S.C. § 1983 for the violation of her Eighth Amendment right to adequate medical care; (2) a municipal liability claim under 42 U.S.C. § 1983 for the violation of her Fourteenth Amendment right to be free from excessive force; and (3) a negligence claim under the Tennessee Governmental Tort Liability Act ("TGTLA"), § 29-20-101 *et seq*. In addition, her husband, Gregory Brawner, brought a claim under Tennessee law for loss of consortium.

On the eve of trial, the parties, under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), stipulated to the dismissal of all the individual defendants—six correctional officers who had been in Scott County's employment. [Stipulation of Dismissal, Doc. 182, at 1]. During trial, the parties agreed to the dismissal of Mrs. Brawner's negligence claim and to the dismissal of her husband's claim for loss of consortium, leaving Mrs. Brawner's two municipal liability claims as the lone claims for the jury's deliberation.

In making her case at trial, Mrs. Brawner contended that officers—unspecified officers—tased her in the leg while she was incarcerated in Scott County Jail and offered into evidence photos that show puncture marks in her leg. [Trial Exs. 16(a), 16(b)].[1] In addition, Mr. Brawner testified that Mrs. Brawner once told him that an officer or officers tased her in the leg, but his testimony was hearsay, and the Court instructed the jury not to consider it. Mr. Brawner also introduced into evidence Mrs. Brawner's medical records, which state: "[S]he was in the jail back in July for failure to appear in court, when she started having seizures. . . . [B]ut the cops thought she was faking and tazed [sic] her[.]" [Trial Ex. 9, at 2]. Next, as to her claim for inadequate medical care, Mrs. Brawner presented into evidence Scott County's "Policy and Procedure Manual for Jail Health and Services." [Trial Ex. 12]. Under this policy, "each inmate is supposed to receive a full physical examination, including 'an inquiry into medications and special health requirements,'" "within fourteen [14] days of booking[.]" [Final Pretrial Order, Doc. 155, at 7].

---

[1] Incidentally, Jesse C. Haggerty, III, M.D., testified that the marks on Mrs. Brawner's legs could have been taser marks but also could have been meth sores, though the Court did not weigh this evidence and consider it as a basis for entering judgment as a matter of law against Mrs. Brawner.

At the close of Mrs. Brawner's evidence, Scott County moved for judgment as a matter of law pursuant to Rule 50(a). As to Mrs. Brawner's claim for excessive force, Scott County argued that she introduced no evidence that an officer tased her or that a pattern of similar tasings had occurred in Scott County Jail. As to Mrs. Brawner's claim for inadequate medical care, Scott County insisted that she did not present evidence of deliberate indifference and that her evidence—at best—sufficed to show negligence. In response to Scott County's motion for judgment as a matter of law, the Court engaged in a lengthy discussion with Mrs. Brawner's counsel, requesting clarification regarding the precise contours of Mrs. Brawner's § 1983 claims:

> The Court: You're arguing in the first instance that there is this 14-day policy, and that policy in and of itself as applied to Tammy Brawner resulted in deliberate indifference to her medical needs, serious medical need.
>
> Mrs. Brawner's Counsel: Correct.
>
> The Court: That's one argument.
>
> Mrs. Brawner's Counsel: That's one of them.
>
> The Court: What is your failure to train argument?
>
> Mrs. Brawner's Counsel: The failure to train is going back to this: had they properly trained [Captain Glynndara Tucker, who performed Mrs. Brawner's intake and did not alert the jail's nurse to Mrs. Brawner's medications] and all the staff on what the actual policy should have been, they wouldn't have had this problem, but they don't do that.

[Trial Tr. (on file with the Court)].

Mrs. Brawner also appeared to argue that Scott County has a policy of not permitting pretrial detainees to receive controlled substances, even if a doctor has prescribed them, and that this policy caused her to receive inadequate medical care:

> Mrs. Brawner's Counsel: Your Honor, let me make a few points if I may, okay, the 14-day holding pattern policy, one. Two, no controlled substances in the jail. [Dr.] Haggerty blasted that. That's a big problem. That's a big problem.

[*Id.*]. Along these lines, Dr. Haggerty did indeed express disapproval of this policy during his testimony:

> Mrs. Brawner's Counsel: There's been some argument already in this case, and there's been a stipulation to the effect that the county, Scott County, just doesn't provide controlled substances in the jail. Do you have an opinion on that?
>
> Dr. Haggerty: Yes, sir. I have a strong opinion on that, and I have to answer a question with a question: why wouldn't you? The patient has a medical problem. The patient's prescribed medications. They're controlled substances, so why would you not provide them?

[*Id.*]. Mrs. Brawner, however, acknowledged that she presented no evidence demonstrating that these policies or their implementation resulted in a pattern of similar constitutional misconduct in Scott County Jail:

> The Court: One of the ways to establish an inadequate training claim is indeed to show a pattern of comparable constitutional violations. There's no evidence of that here, is there?
>
> Mrs. Brawner's Counsel: No, Your Honor.

[*Id.*].

After hearing and carefully considering the parties' arguments, the Court orally granted Scott County's motion as to both of Mrs. Brawner's § 1983 claims and stated its reasons on the record. The Court found that Mrs. Brawner failed to present legally sufficient evidence of any individual officer's use of a taser on Mrs. Brawner or evidence of surrounding circumstances that would permit a reasonable jury to conclude that an officer's use of force was objectively unreasonable. The Court also noted that Mrs. Brawner failed to introduce any evidence of a pattern

4

of similar constitutional violations arising from the use of a taser on other pretrial detainees or inmates in Scott County Jail.

Next, in addressing Mrs. Brawner's claim for inadequate medical care, the Court found no evidence showing that any individual officer was deliberately indifferent to Mrs. Brawner's medical needs. At most, Mrs. Brawner's evidence met the standard for a negligence claim but not the standard for deliberate indifference. The Court also stated that the record, for this claim, too, was without evidence of a pattern of prior constitutional violations—namely violations relating to any individual officer's failure to adequately tend to the serious medical needs of a pretrial detainee suffering seizures. After entering its verdict from the bench, the Court informed the parties that it would issue this written opinion.

## II.   LEGAL STANDARD

Rule 50(a) authorizes a court to grant a defendant's motion for judgment as a matter of law during a jury trial if the plaintiff (1) "has been fully heard on an issue" and (2) "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [plaintiff] on that issue." Fed. R. Civ. P. 50(a)(1). If reasonable jurors, however, could draw different conclusions from the plaintiff's evidence, judgment as a matter of law is improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). Rule 50(a)'s legal standard "mirrors" the standard that governs summary judgment. *Id.* at 250. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### III. ANALYSIS

Section 1983 permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of either a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

A violation of a constitutional or federal statutory right is a prerequisite to liability under § 1983 because § 1983 "does not confer substantive rights" on a plaintiff; rather, it is merely a conduit through which a plaintiff may sue a defendant to "vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Conner*, 490 U.S. 386, 393–94 (1989) ("As we have said many times, § 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry in any § 1983 suit" is therefore "to isolate the precise constitutional violation with which [the defendant] is charged[.]" *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394

("[A]nalysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." (citation and footnote omitted)).

Under the Eighth Amendment—which prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, or the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation omitted)—Mrs. Brawner had a constitutional right to adequate medical care as a pretrial detainee in Scott County Jail, *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). In addition, under the Fourteenth Amendment, she had a constitutional right to be free from excessive force as a pretrial detainee in Scott County Jail. *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008).

### A. Municipal Liability under the Eighth Amendment: Questions of Law

Under § 1983, "[a] municipality or other local government may be liable . . . if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting 42 U.S.C. § 1983) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (Powell, J., concurring))). In other words, "the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the city was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (citation omitted); *see Miller v. Sanilac County*, 606 F.3d 240, 254–55 (6th Cir. 2010) ("To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights.").

*1. An Individual Officer's Violation of a Constitutional Right*

As a basis for entering judgment as a matter of law against Mrs. Brawner, the Court informed the parties that, under the first element, Mrs. Brawner had to present evidence showing that an individual officer had violated her right to adequate medical care. Mrs. Brawner, however, has maintained that "[a] municipality's liability is not contingent upon a finding of individual liability" [Pl.'s Proposed Jury Instructions, Doc. 169, at 3], and that therefore she had no need during trial to present any evidence of an individual officer's violation of her right to adequate medical care, [Trial Tr.]. To support her position, she quotes a sentence from *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018), a recent Sixth Circuit opinion: "A municipality also may be liable even when the individual government actor is exonerated, including where municipal liability is based on the actions of individual government actors other than those who are named as parties." [Pl.'s Proposed Jury Instructions at 3 (quoting *id.* at 900)].

But "individual *liability*," as Mrs. Brawner phrases it, was never at issue in this case—after all, before trial, she agreed to dismiss the individual officers. [*Id.* (emphasis added)]. The issue at trial was whether the record contained proof that an officer committed an individual *violation*, in satisfaction of the first requirement for municipal liability—the requirement that "the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation." *Spears*, 589 F.3d at 256 (citation omitted). In *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001), the Sixth Circuit touched on the importance, if not the necessity, that an individual officer's violation of a constitutional right has to a municipal liability claim: "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Id.* at 687 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986));

8

*see Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

The district courts in this circuit, including this Court, have regularly viewed this statement from *Watkins* as authority to dismiss municipal liability claims when a plaintiff has not shown that an individual officer of the municipality committed a constitutional violation. *See, e.g.*, *Wheeler v. Graves County*, No. 5:17-CV-38-TBR, 2019 WL 1320506, at *8 (W.D. Ky. Mar. 22, 2019) ("In finding that no excessive force occurred, the Court must also consequently dismiss [Plaintiff's] remaining Fourth Amendment claims against Graves County . . . for failure to properly train their law enforcement officers. Contrary to Plaintiff's assertion otherwise, it is well settled law that '[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.'" (quoting *Watkins*, 273 F.3d at 687)); *ABCDE Operating, LLC v. City of Detroit*, 254 F. Supp. 3d 931, 958 (E.D. Mich. 2017) ("To the extent that the individual Defendant officers did not violate Plaintiff's Fourth Amendment rights, the Defendant City likewise cannot be held liable." (citing *Watkins*, 273 F.3d at 687)); *Flinn v. Blackwood*, No. 3:08–CV–218, 2009 WL 803732, at *2 (E.D. Tenn. Mar. 23, 2009) ("Since the undisputed facts compel a finding that plaintiff has failed to state a claim against the officers, the City of Rockwood cannot be liable to the plaintiff under § 1983" (citing *Watkins*, 273 F.3d at 687)).

And the Sixth Circuit itself—as recently as six days ago, in an unpublished opinion that succeeded *Winkler*—invoked *Watkins* to affirm a district court's dismissal of a municipality claim after determining that the plaintiff lacked cognizable claims against the individual officers. *See*

*Williams v. City of Chattanooga*, No. 18-5516, 2019 WL 2145649, at *5 (6th Cir. May 15, 2019) ("[B]ecause we find that the Officers did not violate [Plaintiff's] Fourth Amendment rights, we likewise conclude that the City cannot be subject to municipal liability." (citing *Watkins*, 273 F.3d at 687)); *see also Green v. City of Southfield*, 759 F. App'x 410, 413 (6th Cir. 2018) ("Because we find that [Plaintiff's] constitutional claims against the individual defendants are untimely, Count II, which was lodged against the City of Southfield, must be dismissed." (citing *Watkins*, 273 F.3d at 687)). The Sixth Circuit also appeared to show fidelity to *Watkins* in at least one published opinion. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008) ("[T]he verdict form should not have been structured in a way that permitted the jury to make findings relating to the liability of the municipality before, and entirely independent of, the findings regarding the individual officials."); *but see Epps v. Lauderdale County*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, Jr., J., concurring) ("I read *Heller* to prohibit municipal liability only when the victim suffers no constitutional injury at all, not when the victim fails to trace that constitutional injury to an individual police officer." (citation omitted)).

But again, Mrs. Brawner—circumnavigating these cases and relying on *Winkler*—argues that "[a] municipality's liability is not contingent upon a finding of individual liability," driving this Court to address *Winkler* head on and to determine whether it contains any grist for her position. [Final Pretrial Order at 3]. It does not. In *Winkler*, the Sixth Circuit expressly stated that it declined to decide whether the absence of an individual officer's constitutional violation upends a municipal liability claim: "[W]e need not decide whether, under our court's precedent, a municipality's liability under § 1983 is always contingent on a finding that an individual defendant is liable for having committed a constitutional violation." *Winkler*, 893 F.3d at 901.

10

Any reliance that Mrs. Brawner places on *Winkler* is therefore not steeped in precedential value but in dicta. And more importantly, the Sixth Circuit, in *Winkler*, never renounced the statement in question from *Watkins*, observing only that this statement "might" have a "narrower" application depending on the circumstances, including the constitutional violation at issue. *Id.* at 900–01. This language makes a departure from *Watson* sound like the exception rather than the norm. The question is when and how this exception might apply.

Along these lines, Justice William J. Brennan once argued, in a concurring opinion, that the Supreme Court has "[n]ever doubted that a single decision of a city's properly constituted legislative body is a municipal act capable of subjecting the city to liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (Brennan, J., concurring) (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Owen v. City of Independence*, 445 U.S. 622 (1980))). In *Newport*, the municipality was liable under § 1983 after the municipal council prevented a rock band from performing at a concert by canceling its promoter's license. *Newport*, 453 U.S. at 249–52. The constitutional violation concerned the First Amendment's prohibition against content-based censorship. *Id.* 252–53. In *Owen*, the municipality was liable under § 1983 after the municipal council discharged the city manager without a hearing. *Owen*, 445 U.S. at 625–50. The constitutional violation concerned the Fourteenth Amendment's guarantee of substantive and procedural due process. *Id.* at 630, 633. According to Justice Brennan, "the actions of the municipalities' policymaking organs," in both *Newport* and *Owen*, "were properly charged to the municipalities themselves." *Praprotnik*, 485 U.S. at 138–39 (Brennan, J., concurring) (footnote omitted).

But he also acknowledged that a municipality is largely incapable of acting or enforcing a policy by itself: "Municipalities, of course, conduct much of the business of governing *through* human agents." *Id.* at 138 (Brennan, J., concurring) (emphasis added). This statement holds especially true in cases that originate from inside prison walls, where individual officers habitually and necessarily enforce policies on a municipality's behalf. *See generally Block v. Rutherford*, 468 U.S. 576, 585 (1984) (stating that prison officials are entitled to deference in their "execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" (quotation omitted)); *Salem v. Warren*, 609 F. App'x 281, 283 (6th Cir. 2015) ("[W]e have repeatedly required that prison officials carry out these policies in a 'uniform and evenly applied' . . . manner." (quotation omitted)).

In these types of cases, in which plaintiffs commonly invoke the Eighth Amendment, the need for an individual actor's constitutional misconduct would appear to be essential—if not in all cases, then in many or most of them—in light of the Supreme Court's instruction that the "unnecessary and wanton infliction of pain" under the Eighth Amendment requires "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("It is *only* such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." (emphasis added) (footnote omitted)); *see also Brooks v. Celeste*, 39 F.3d 125, 127–28 (6th Cir. 1994) (stating that "[i]n *all* cases, the required state of mind is wantonness" and the "meaning of wantonness depends on the type of offending *conduct*" (emphasis added)). Indeed, the Supreme Court has recognized that, under an Eighth Amendment claim, "considerable conceptual difficulty would attend any

12

search for the subjective state of mind of a governmental entity, as distinct from that of a governmental official." *Farmer v. Brennan*, 511 U.S. 825, 841 (1994).

In examining *Newport*, *Owen*, and the standard governing Eighth Amendment claims, however, this Court merely offers its musings about the question that the Sixth Circuit declined to answer in *Winkler*, without answering that question itself. Due to the Sixth Circuit's adherence to *Watkins* in both recent and older opinions, *Williams*, 2019 WL 2145649 at *5; *Green*, 759 F. App'x at 413; *Ford*, 535 F.3d at 491, and the perception among district courts that *Watkins* is "well settled law," *Wheeler*, 2019 WL 1320506 at *8, an en banc abrogation of *Watkins* may be necessary before these courts—including this Court—will be prepared to decamp from it, *see Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) ("Because panels of this court have split over the correct characterization of the rule, we granted en banc review." (citation omitted)).

### 2. The Subjective Component of Deliberate Indifference

As another basis for entering judgment as a matter of law against Mrs. Brawner, the Court found that she had failed to present any evidence of an individual officer's deliberate indifference to her serious medical needs. The Court informed the parties that it would have instructed the jury that deliberate indifference consists of two components—one objective and one subjective. *Farmer*, 511 U.S. at 834; *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015). As to the subjective component, the Court told the parties that it would have explained to the jury that Mrs. Brawner had to prove an officer (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, (2) actually drew that inference, and (3) failed

to take reasonable measures to reduce the risk of harm. *Farmer*, 511 U.S. at 837, 847; *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 816 (6th Cir. 1996).

In an effort to stave off entry of judgment as a matter of law, however, Mrs. Brawner contended that the subjective component of deliberate indifference "no longer applies to medical-care claims brought by pre-trial detainees," [Pl.'s Proposed Jury Instructions at 2], but she conceded at trial that "we don't have a Sixth Circuit case that says it." [Trial Tr.]. The law in the Sixth Circuit has always been—and it continues to be—that the subjective component is an element of deliberate indifference. *See Rafferty v. Trumbull County*, 915 F.3d 1087, 1094 (6th Cir. 2019) ("To make out a claim under the Eighth Amendment, the prisoner *must* satisfy both an objective and a subjective component." (emphasis added) (quotation omitted)); *Richmond v. Huq*, 885 F.3d 928, 938 n.3 & 938–47 (6th Cir. 2018) (expressing doubt, in dicta, as to the necessity of the subjective component but applying it anyway).

This Court simply does not have license to disturb the Sixth Circuit's precedent, even if it disagrees with it. *See United States v. Hunt*, 278 F. App'x 491, 500 (6th Cir. 2008) (stating that the Sixth Circuit's published decisions "*must* be followed" by district courts, in keeping with stare decisis (emphasis added)); *see also Kimble v. Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) ("[A]n argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent."); *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014) (stating that "*stare decisis* is a foundation stone of the rule of law"); *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 478–79 (1987) (declaring that "[t]he rule of law depends in large part on adherence to the doctrine of *stare decisis*," because it is "a natural evolution from

the very nature of our institutions" (internal quotation marks and quotation omitted)). The Court must therefore reject Mrs. Brawner's argument.

### B. Municipal Liability under the Eighth Amendment: Sufficiency of the Evidence

#### 1. Constitutional Violation

Mrs. Brawner failed to provide sufficient evidence showing that any officer was deliberately indifferent to her medical needs. As set out above, in accordance with the established law in this circuit, Mrs. Brawner was required to present evidence showing that an individual officer had violated her right to adequate medical care.[2] As noted above, the Court would have instructed the jury, in accordance with the applicable law, that deliberate indifference, on the part of an officer, consists of two components—one objective and one subjective. The Court acknowledges that Mrs. Brawner provided sufficient evidence on the objective component, that is, a reasonable jury could find that she "demonstrate[d] the existence of a sufficiently serious medical need." *Spears*, 589 F.3d at 254. It is the subjective component on which her evidence was lacking.

"For the subjective component, the [plaintiff] must demonstrate that the [individual officer] possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 890 (quoting *Spears*, 589 F.3d at 254). To adequately show this, Mrs. Brawner must offer proof that the individual officer "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 837). Ultimately, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

---

[2] *See supra* Section III.A.1.

Regarding the medical care provided to Mrs. Brawner, the testimony at trial generally established that she was booked into Scott County Jail around 1:00 p.m. by Captain Tucker on June 29, 2016. Captain Tucker followed the standard booking procedure, noting on Mrs. Brawner's intake form that she was on four prescription medications, and that she did not report any prior epileptic seizures. Thereafter, in the early morning hours of July 7, Mrs. Brawner experienced a seizure, and EMS was called. The Scott County Ambulance Service report indicated that EMS was dispatched by 911 to respond to the Scott County Jail for Mrs. Brawner's seizure activity. When EMS arrived ten minutes after receiving the request, Mrs. Brawner appeared to be in the post-ictal phase of the seizure. Dr. Gayda treated Mrs. Brawner at Lafollette Medical Center, prescribed her phenobarbital, and discharged her with instructions to follow up with a private physician within one to two days. According to nurse Massengale's testimony, however, Mrs. Brawner was not seen by a physician while incarcerated at the Scott County Jail.

Thereafter, in the morning hours of July 11, Mrs. Brawner began experiencing a prolonged series of seizures. The jail officers performed a basic exam of her vitals, and the jail physician, Dr. Caparelli, instructed to give Mrs. Brawer a 200mg dose of Dilantin. Officers continued to sit with or monitor her until nurse Massengale arrived roughly three hours after the seizure activity commenced that morning. Once present, nurse Massengale placed her in a holding cell and instructed 15-minute interval monitoring. Jail officers continued monitoring of her throughout the morning, noting multiple seizures. The officers' records also indicate that nurse Massengale was present with Mrs. Brawner at various times throughout the morning. At 11:38 a.m., the observation notes indicate that EMS was present at her bedside to transport her to Lafollette Medical Center.

Mrs. Brawner failed to provide sufficient evidence for a reasonable jury to find that a particular officer working for Scott County was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, actually drew that inference, and failed to take reasonable measures to reduce the risk of harm. *See Farmer*, 511 U.S. at 837, 847.

First, as to the failure to provide the medications she listed on the intake form, there is nothing in the record suggesting that any reasonable corrections officer—or even a medical provider for that matter—would have immediately recognized that Mrs. Brawner was at a high risk of having seizures. In actuality, the evidence introduced at trial indicated that these medications were prescribed for an array of medical possibilities, and that, for many of them, suppression of seizures was generally not the most prevalent use. In any event, Mrs. Brawner did not introduce evidence of her prior medical history to offer any insight into when she was originally prescribed these medications, or for what purpose they were prescribed, leaving those questions for complete speculation, both for the jury, but more importantly, for purposes of the instant motion, for the Scott County personnel. The record of this case does not show that the Scott County employees knew of Mrs. Brawner's substantial medical risk. Further, Mrs. Brawner did not provide evidence of any of Scott County's employees' own inferences about her presenting medications and risks associated with their discontinuation. And, above all, she did not show that any officer or medical care provider *actually* drew the inference that she faced a substantial risk of seizures from the lack of her medication, and failed to take reasonable measures to reduce the risk of harm. Her failure to produce evidence as to Scott County's employees' subjective intentions was one terminal downfall of her Eighth Amendment claim.

Regarding the second element—that the municipality was responsible for the constitutional violation—Mrs. Brawner proposed two general theories of municipal liability against Scott County for its failure to provide constitutionally adequate medical care under the Eighth Amendment: (1) a failure to train theory; and (2) a custom or policy theory. The Court takes each theory in turn.

### 2. Failure to Train

"In limited circumstances, a local government's decision not to train employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. To establish municipal liability under a failure to train theory, a plaintiff must show that (1) the training program is inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413-14 (6th Cir. 2015) (citing *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)).

Only with a showing of deliberate indifference "can such a shortcoming be properly thought of as a [municipality] 'policy or custom' that is actionable under § 1983." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). This is consistent with the deliberate indifference standard because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have *deliberately chosen* a training program that will cause violations of

constitutional rights." *Connick*, 563 U.S. at 62 (emphasis added). Deliberate indifference is "a stringent standard of fault," which demands more than a showing of "simple or even heightened negligence" and, instead, requires a showing that "a municipal actor disregarded a known or obvious consequence of his action." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (quoting *Bryan County*, 520 U.S. at 410).

Here, Mrs. Brawner failed to provide sufficient evidence as to the adequacy (or inadequacy) of any training program employed by Scott County. This material insufficiency in and of itself justifies the Court's granting of Scott County's motion as to Mrs. Brawner's Eighth Amendment claim for failure to train its employees. But even assuming that Mrs. Brawner had shown the inadequacy of a training program instituted by Scott County, she presented absolutely no proof to show that such an inadequacy was a result of Scott County's deliberate indifference. As the Sixth Circuit has explained, there are "two situations justifying a conclusion of deliberate indifference in claims of failure to train or supervise." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

*First*, a plaintiff can show "a failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Id*. at 700–01. The Sixth Circuit has explained that this is available in a "narrow range of circumstances where a federal rights violation may be a highly predictable consequence of a failure to equip employees with specific tools to handle recurring situations." *Winkler*, 893 F.3d at 903 (internal alterations and quotation marks omitted).

Mrs. Brawner has not provided any evidence justifying a finding that this case falls into the first type of situation explained above. Indeed, she argued at trial that Scott County Jail

19

personnel were improperly trained to sit with the individual and to leave medical decisions regarding inmates up to the nurse.  But she did not provide any evidence explaining how the quality of the medical training that officers did receive, as well as their training to leave medical decisions regarding inmates up to the nurse, put Scott County on notice of the likelihood that jail personnel would inadequately respond to an inmate's medical needs.  Additionally, the evidence that was produced in this case showed that on July 15—after her return from her first transport to Lafollette Medical Center—she began having seizures in the morning hours, and nurse Massengale, after arriving for her shift at 8:00 a.m., placed her on 15-minute observation watch in a holding cell. Thereafter, the officers and the nurse periodically monitored her for the rest of the morning— noting multiple instances of seizures in the observation log report—sitting with her at times, and EMS eventually was called to transport her to the hospital at around 11:34 a.m.

The evidence showed that healthcare professionals were contacted multiple times throughout her incarceration, specifically when she was experiencing seizure activity.  Not only that, but EMS was summoned to transport her to the emergency room at Lafollette Medical Center on July 7, after her initial seizure activity.  Subsequently, on July 15, EMS was again called to transfer her to the emergency room at Lafollette Medical Center a second time after additional seizures. Mrs. Brawner simply makes no showing whatsoever that Scott County's actual training was inadequate in light of foreseeable consequences that could result from the lack of training.

*Second*, a plaintiff may show "deliberate indifference [] where the city fails to act in response to repeated complaints of constitutional violations by its officers."  *Pendergrass*, 455 F.3d at 701 (quotation omitted).  As Mrs. Brawner never made *any* mention in her case-in-chief

20

(nor argument) of any *repeated* complaints by other individuals of constitutional violations by Scott County officers, this situation is wholly unsupported in the instant case.

Of final note, the third element of Mrs. Brawner's failure to train theory of municipal liability—that such inadequate training program was "closely related to" or "actually caused" her injury—went without mention. Indeed, she did not present any proof that the *training*, or lack of training, that Scott County officers received was the cause of her injury. Dr. Haggerty provided opinion testimony regarding the failure of the jail and the medical personnel at the jail to properly deal with her medical needs as being the cause of her claimed injuries. However, neither he, nor any other witness, made any mention of the jail's training procedures, or how any claimed inadequate training was the cause of Mrs. Brawner's injuries. This essential requirement simply went unacknowledged in Mrs. Brawner's case-in-chief.

### 3. Policy or Custom of Intolerance

Mrs. Brawner argued that several customs or policies of Scott County were the cause of her injuries. In the final pretrial order, Mrs. Brawner attacked four of the policies or customs of Scott County: (1) the written policy delaying inmate's continuation of prescribed medicine for up to fourteen days after intake; (2) the blanket prohibition against the use of Suboxone; (3) a policy of staffing only one nurse and only during weekdays; and (4) a policy of destroying and failing to preserve "shift notes." [Final Pretrial Order at 7–8]. As this Court understands, at trial, Mrs. Brawner asserted additional alternative customs or policies which, she argued, were supported by the evidence presented, including: (1) the jail's custom and practice of following the two-week policy and (2) the jailors' custom of leaving medical care to the nurse or doctor.

"A city's custom or policy can be unconstitutional in two ways: 1) facially unconstitutional as written or articulated, or 2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692-94). At trial, Mrs. Brawner clarified that her claims against Scott County's policies and customs regarding her medical care were "as applied" challenges, seemingly contesting the consistent implementation of the policies. "Where the identified policy is itself facially lawful, the plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id.* (quoting *Bryan County*, 520 U.S. at 407).

Even if Mrs. Brawner had produced sufficient evidence for a jury to find that an individual officer violated her constitutional right to adequate medical care, she nevertheless failed to show that Scott County "knew of and disregarded such risk" through the outlined policies or customs. *Winkler*, 893 F.3d at 902. Indeed, the evidence provided that Scott County had established policies and procedures for dealing with inmates' medical care, a fact that Mrs. Brawner stipulated to. *See* [Final Pretrial Order at 1–3]. Even if the jury were to find that she suffered constitutional violations—which this Court has held above that it could not have done—and such violations were a result of the Scott County policies or customs challenged by her, she ultimately offered zero evidence showing a pattern of such violations against her or other Scott County Jail inmates, making it impossible to demonstrate deliberate indifference on Scott County's part. Not a single policy or custom challenged by Mrs. Brawner was shown to be a part of a recurrent pattern of constitutionally inadequate medical care by the County. It was simply not shown, as to any of the

above-outlined policies and customs, that Scott County knew how such customs or policies would affect Mrs. Brawner's serious medical need, or that it was obvious that such customs or policies would have the claimed consequences realized by Mrs. Brawner in this case.

### C. Municipal Liability under the Fourteenth Amendment: Sufficiency of the Evidence

The Fourth Amendment protects people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under this amendment, an officer's use of force "will constitute a seizure," and it will violate a federal right if it is "'objectively [un]reasonable' in light of the facts and circumstances." *Jackson v. Washtenaw County*, 678 F. App'x 302, 306 (6th Cir. 2017) (quoting *Graham*, 490 U.S. at 397). "[A] pretrial detainee's excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment." *Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–75 (2015)); *see Kingsley*, 135 S. Ct. at 2479 (Alito, J., dissenting) (stating that a pretrial detainee's excessive force claim under the Fourth Amendment "would be indistinguishable from [a] substantive due process claim"). Again, to establish municipal liability under the Fourteenth Amendment, "the plaintiff must establish that: (1) the plaintiff's harm was caused by a constitutional violation; and (2) the city was responsible for that violation." *Spears*, 589 F.3d at 256 (citation omitted).

#### 1. Constitutional Violation

Under these elements, Mrs. Brawner failed to provide sufficient evidence from which a reasonable jury could find that Scott County could be held liable on her Fourteenth Amendment

excessive force claim. She failed even to establish the first requirement: that a constitutional violation caused her injury. As an initial matter, the Court finds it appropriate to outline the totality of the evidence that Mrs. Brawner presented regarding the basic question of whether she was actually tased by Scott County Jail personnel. The only evidence presented to the jury having any relation to the use of a taser in this case was (1) the photograph of Mrs. Brawner's leg; (2) Mrs. Brawner's months-later hearsay report[3] of being tased at the jail to Tennova Neurosciences; and (3) Mr. Brawner's hearsay testimony that Mrs. Brawner told him that she had been tased.[4] Otherwise, Mrs. Brawner did not put on any other evidence allowing the jury to determine that she was actually tased.[5]

Sidestepping away from the facts surrounding the taser incident, Mrs. Brawner directed the Court to the medical records entered into evidence. Upon review, the medical records do not provide that she was actually tased, rather, they only suggest that she later reported to her medical provider that she was tased.[6] Further, there was no testimony that the marks on her leg were in fact from a taser. Ms. Brawner's expert, Dr. Haggerty, testified that the pictures resembled marks

---

[3] This medical report was entered into evidence in its entirety without any objection by Scott County. Although all statements made in the report offered for the truth of the matter contained within the statement are unquestionably hearsay, the Court does note that some of the statements contained within the report may ultimately have been excepted from the rule against hearsay per Federal Rule of Evidence 803(4).

[4] The Court notes that Scott County objected to this evidence—albeit not contemporaneously and subsequent to the witness's verbal answer—and the Court ultimately granted the hearsay objection and specifically instructed the jury to disregard this hearsay testimony.

[5] The Court recalls that Mrs. Brawner's counsel admitted as much in oral argument on the instant motion, claiming that the medical record entered into evidence was "about as good of evidence as you can have."

[6] The only mention of Mrs. Brawner being tased in admitted medical records is found in her Exhibit 9, which memorializes her visit to Tennova Neurosciences on December 19, 2016, nearly six months after her incarceration in the Scott County Jail. There, the plaintiff reported that she was in jail back in July and "[s]he had 30 [seizures] witnessed by other inmates, but the cops thought she was faking and ta[s]ed her and put her in solitary." Additionally, Mrs. Brawner's chief complaint to Tennova Neurosciences was that "[s]he feels her memory is very poor, and she does not ever have a good day now."

that could have been made by a taser, but he was not present for the claimed incident, and would ultimately not offer any opinion as to whether they were in fact taser marks. Mr. Brawner testified that she did not have the marks going into the jail, but did have the marks when he saw her at the hospital after June 29, 2016. However, he never provided any (non-hearsay) testimony that the marks were in fact from a taser. And even if he had, neither he nor any other witness testified to *any* of the surrounding circumstances of the potential tasing incident.

Mrs. Brawner argued that the medical records indicating that she could have been tased, coupled with Mr. Brawner's hearsay testimony of what she told him, as well as the picture of her leg, established sufficient circumstantial evidence allowing a reasonable jury to conclude that she was tased at Scott County jail. Disregarding Mr. Brawner's hearsay testimony, as the jury was properly instructed to do, leaves only the photograph and the December 19, 2016 Tennova Neurosciences medical record. At best, a jury would have to credit Mrs. Brawner's reporting complaint months later to Tennova Neurosciences—without her own testimony in support—to find that Scott County personnel employed a taser during this particular incarceration. The Court declines to make a definitive finding that Mrs. Brawner failed to produce sufficient evidence that she was in fact tased only because it is not necessary to support the Court's ruling on Scott County's Rule 50 motion.

Whether or not Mrs. Brawner was in fact tased is of no ultimate consequence, for the evidence that she must have provided to survive Scott County's motion was not only that she was tased but also that such tasing *was a violation of her constitutional right*. Even if the jury were to find that she was tased at some point during her stay at the Scott County jail, there is absolutely no evidence outlining the circumstances surrounding the tasing event. Indeed, the Sixth Circuit

has consistently found that there are many legitimate circumstances where an officer's use of a taser is constitutionally permitted. *See Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) ("Active resistance to an officer's command can legitimize an officer's use of a Taser." (citing *Hagans v. Franklin Cty. Sherriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012))); *see also Shreve v. Franklin County*, 743 F.3d 126, 135 (6th Cir. 2014) (finding that, in a Fourteenth Amendment excessive force case, summary judgment was proper for individual jail defendants who used a taser against the plaintiff because it was not established that the deputies' use of the taser was "conscience shocking").

Without *any* testimony about the circumstances surrounding the tasing, the jury was not able, nor entitled, to find that such claimed tasing was, in fact, in violation of Mrs. Brawner's constitutional rights. The simple finding alone that she was tased does not automatically permit a jury to determine that such tasing violated the Constitution. Mrs. Brawner's counsel's admission to the Court, in response to Scott County's Rule 50 motion, that there is no evidence as to the circumstances of the tasing event largely compels the Court's dismissal of the excessive force claim. Without *any* facts as to the circumstances surrounding the tasing, Mrs. Brawner failed to meet her burden of showing that the tasing was objectively unreasonable, in violation of her constitutional rights. Because she failed to provide sufficient evidence for a jury to find she suffered a violation of her constitutional rights, her excessive force claim against Scott County must fail.

### 2. Failure to Train

Additionally, as outlined above, "[l]iability against [a local government] arises only if it violated a constitutional or statutory right through a custom or practice of doing so." *Hidden Vill., LLC v. City of Lakewood*, 734 F.3d 519, 523 (6th Cir. 2013). In other words, "[t]he governmental action must be 'the moving force' behind the constitutional violation" for liability to attach to the governmental entity. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 541 (6th Cir. 2018). Even if Mrs. Brawner had provided sufficient evidence to support a jury finding of a constitutional violation, she nevertheless failed to provide any evidence as to any custom or practice of Scott County that led to the claimed violation. Outside of the failure to properly train its employees, which is discussed below, there is no policy, custom, regulation, or decision officially adopted by Scott County which Mrs. Brawner ever pointed to as a cause of her claimed tasing.

At trial, she argued that Scott County's failure to properly train its employees was the moving force behind the claimed constitutional violation. Again, "[t]o establish municipal liability for a failure to train, a plaintiff must show (1) the training program is inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 413-14 (6th Cir. 2015) (citing *Plinton*, 540 F.3d at 464).

As to the first element under Mrs. Brawner's failure to train theory, no mention of any training program regarding the use of tasers was made at any point throughout the entirety of the trial, rendering it impossible for a jury to determine whether or not any such training program was adequate. The second element, that any inadequacy of the training was the result of the

municipality's deliberate indifference, also went completely unmentioned. Without doubt, there was a complete absence of testimony as to any other instances of tasing to demonstrate that the municipality has ignored a *history* of abuse and was on notice that its training was deficient. Likewise, there was no supporting evidence at all suggesting that Scott County had failed to train its employees to handle recurring situations presenting an obvious potential for future violations similar to this single claimed violation. Lastly, Mrs. Brawner provided no evidence as to relation or causation—indeed, because she failed to present any evidence as to the first two elements, it was practically impossible to present sufficient evidence as to the third element—relating the County's training to this claimed tasing event. The failure to train theory was simply unsupported at trial. Concurrently, by failing to provide any evidence regarding any other policy or custom as a cause of the claimed unconstitutional tasing, the excessive force claim must fail.

## IV. CONCLUSION

At trial, Mrs. Brawner did not present legally sufficient evidence that would allow a reasonable jury to find in her favor as to either of her § 1983 claims. Scott County's motion for judgment as a matter of law is therefore **GRANTED**. The Clerk of Court is **DIRECTED** to close this case.

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE